IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| A.L., | No. 88872-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| JOHN TORSTEN LOOP, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — John "Jack" Loop challenges the trial court's entry of a four-year domestic violence protection order (DVPO) protecting his daughter, A.L. John fails to demonstrate that the trial court abused its discretion. Accordingly, we affirm.

BACKGROUND

A.L. is the daughter of John and Lisa Loop.[1] John and Lisa separated in December 2020, after John assaulted Lisa. A.L., then 13 years old, witnessed the immediate aftermath of the assault when she was locked in a bathroom with Lisa while Lisa called 911. John was originally charged with assault in the second degree for the incident, but he eventually pleaded guilty to assault in the fourth degree.

The following facts, which were considered by the trial court in this matter, are taken from our opinion in John and Lisa's dissolution proceedings:

---

[1] Because the parents share the same last name, we refer to them by their first names.

On June 1, [2021,] the trial court entered a temporary parenting plan, providing that "the "father's contact with the child shall be limited to a therapeutic setting based on the lack of emotional ties between the daughter and her father at this time." In spite of this order, the court later noted that Jack "engaged in a relentless campaign of surveillance and unwanted contact" with A.L. Some examples of Jack's behavior included surreptitiously recording a therapy session, repeatedly contacting A.L.'s tennis coach to be admitted to her practice, creating a fake Instagram account to follow A.L., and adding pointed songs to her playlist with titles such as "Parental Alienation" and "Mom Lied About Everything."

A new temporary parenting plan was entered on August 12, which stated,

> Father agrees that until the 12/13/21 review hearing, there shall be no contact with [A.L.] unless she initiates such contact. *This agreement includes not initiating contact with [A.L.] via email, text message, or sending notes through third parties or placing songs on [A.L.]'s playlists.*
>
> *The father shall not intentionally show up at places he knows [A.L.] will be nor shall he watch her from afar.*

The amended temporary parenting plan entered in December 2021 similarly prohibited Jack from contact with A.L. unless she initiated it.

On April 15, 2022, the trial court entered a second amended temporary parenting plan reestablishing contact between Jack and A.L. in phases, as recommended by parenting evaluator Dr. Lynn Tuttle. In phase 1, Jack was permitted to have one three-hour therapeutic supervised visit per week, but was not otherwise permitted to communicate with A.L. unless she initiated the contact. In the supervised visit on May 8, Jack read a letter of apology to A.L., which A.L. felt was insincere. A.L. became upset and left the visit. Dr. Mollie Hughes, the visit supervisor, described Jack as making irrational assertions "possibly as a way to completely disregard [A.L.'s] feelings and thoughts as her own." Hughes immediately resigned as visit supervisor as a result.

Shortly after this failed visit, Jack had a book and game that he had ordered online delivered to A.L., despite the parenting plan prohibiting him from doing so. In October of that same year, Jack had a package containing naloxone delivered to A.L.'s home. A.L.

2

was truly upset by these deliveries and considered them to be "disturbing invasions of her privacy."

In re Marriage of Loop, No. 86382-7-I, slip op. at 1-3 (Wash. Ct. App. Jan. 21, 2025) (unpublished) https://www.courts.wa.gov/opinions/pdf/863827.pdf (alteration in original) (footnotes omitted).

On February 23, 2024, the trial court entered the final parenting plan in the dissolution proceeding. The parenting plan directed that John have no contact with A.L. unless she initiated it. "Contact" for purposes of the parenting plan included:

> telephone, video calls, email, text message, third parties, dropping in on any "Alexa's" or electronic devices in her home, tagging her on social media, posting photos of her online or discussing her in online forums, sharing electronic photo albums, sending notes or gifts through third parties, placing songs on A.L.'s playlists or sending packages or letters to A.L.'s home.

The parenting plan also directed John to not "show up at places he knows A.L. will be nor shall he watch her from afar." The court contemporaneously entered a restraining order, set to expire September 1, 2025. On appeal, this court affirmed the parenting plan and restraining order. Loop, No. 86382-7-I, slip op. at 4.

On August 22, 2025, A.L., then 18 years old, filed a petition for a permanent protection order against John, after John posted on Facebook stating that he intended to reach out to A.L. once the restraining order expired. Among the attachments to her petition were the final parenting plan, restraining order, findings of fact and conclusions of law issued by the arbitrator in the dissolution, A.L.'s victim impact statement that she provided to the court following John's assault conviction, documents from John's criminal proceedings, and a report

3

from one of the visit supervisors. A.L. additionally described and provided

photographs documenting John's actions since the parenting plan was entered.

For example, in April 2024, John hung targeted posters about "parental

alienation"—a topic he had discussed frequently since the commencement of

dissolution proceedings—at multiple locations A.L. frequented, including at her

school, along her route to school, at her local community center, and at the

Starbucks she often visited.

In September 2025, both parties appeared at the protection order hearing

via Zoom. The parties opted not to testify and relied on their written submissions

and brief statements to the court. After hearing from both parties, the

commissioner granted A.L.'s petition for a protection order. The commissioner

found that John had committed domestic violence

> by inflicting fear of physical harm during the 2020 incident when the
> respondent assaulted the petitioner's mother while the petitioner
> was present. The petitioner witnessed (heard) a portion of the
> assault and saw and experienced the immediate aftermath when
> she was with her mother, locked in a bathroom, while her mother
> called 911. The court finds that some of the subsequent actions by
> the respondent over the past 5 years furthered the petitioner's fear.
> Some (but not all) of the respondent's actions and attempts to
> contact the petitioner (as described in the written petition and set
> forth in the arbitrator's findings, at sub #7) constitute unlawful
> harassment. Specifically concerning to the court was the
> respondent's choice to post posters about parental alienation near
> the petitioner's home and other locations, knowing she would see
> them and knowing she would know they were posted by him (this is
> an issue he has publicly associated himself with on Facebook).

The commissioner also found that A.L.'s testimony about her fear of John was

credible. Rather than enter the requested permanent protection order, however,

4

the commissioner set the order to expire on September 26, 2029, noting that it would protect A.L. for the duration of her time at college.

John filed a motion for revision, arguing that the commissioner erred by finding that he had inflicted fear of harm on A.L. in 2020, by determining that posting posters about parental alienation at areas A.L. frequented constituted unlawful harassment, by finding that he had engaged in domestic violence, and by setting the duration of the order for four years. The court on revision determined that A.L. "established by a preponderance of the evidence that the Respondent committed acts of domestic violence," as he had "engaged in harassment and stalking of the Petitioner." The court also noted that it "agrees with the length of the protection order based on the long history of violating the restraining order." However, the court determined "the incident with the Petitioner's mother does not constitute domestic violence against the Petitioner." The court otherwise adopted the commissioner's findings of fact and denied the motion for revision.

John appeals.

ANALYSIS

"Whether to grant or deny a domestic violence protection order is generally reviewed for abuse of discretion." Rodriguez v. Zavala, 188 Wn.2d 586, 590-91, 398 P.3d 1071 (2017) (citing Hecker v. Cortinas, 110 Wn. App. 865, 869, 43 P.3d 50 (2002)). A trial court abuses its discretion if its decision is based on untenable grounds or reasons or is otherwise manifestly unreasonable. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "Our review

focuses on the actions of the trial court, rather than the commissioner, because a trial court's order on a motion for revision supersedes any rulings by a commissioner." In re the Domestic Violence Prot. Ord. for Timaeus, 34 Wn. App. 2d 670, 678, 574 P.3d 127 (2025). "When a trial court denies a motion for revision, it adopts the commissioner's findings, conclusions, and rulings as its own." Id. at 678-79.

"We review a trial court's findings of fact for substantial evidence, generally deferring to the trier of fact on questions of witness credibility, conflicting testimony, and persuasiveness of the evidence." Id. at 679. Substantial evidence is "evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

I. Substantial Evidence

A court "shall issue a protection order if it finds by a preponderance of the evidence that the petitioner . . . has been subjected to domestic violence by the respondent." RCW 7.105.225(1)(a). Domestic violence is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one family or household member by another family or household member." RCW 7.105.010(10)(b).

Unlawful harassment is defined as "[a] knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose."

RCW 7.105.010(37)(a). The "course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Id. Similarly, the statute defines "stalking" in relevant part as:

> Any course of conduct involving repeated or continuing contacts, attempts to contact, monitoring, tracking, surveillance, keeping under observation, disrupting activities in a harassing manner, or following of another person that:
> (i) Would cause a reasonable person to feel intimidated, frightened, under duress, significantly disrupted, or threatened and that actually causes such a feeling;
> (ii) Serves no lawful purpose; and
> (iii) The respondent knows, or reasonably should know, threatens, frightens, or intimidates the person, even if the respondent did not intend to intimidate, frighten, or threaten the person.

RCW 7.105.010(35)(c).

"Course of conduct" is defined as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 7.105.010(7)(a). Further, the statute identifies considerations for the court in applying these definitions:

> In determining whether the course of conduct serves any legitimate or lawful purpose, a court should consider whether:
> (i) Any current contact between the parties was initiated by the respondent only or was initiated by both parties;
> (ii) The respondent has been given clear notice that all further contact with the petitioner is unwanted;
> (iii) The respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner;
> . . . .
> (v) The respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy or the purpose or effect of creating an intimidating, hostile, or offensive living environment for the petitioner; or

7

> (vi) Contact by the respondent with the petitioner or the
> petitioner's family has been limited in any manner by any previous
> court order.

RCW 7.105.010(7)(b)(i)-(iii), (v)-(vi). "Attempts to contact a person after they give actual notice that they do not want the other person to contact them is prima facie evidence that the [respondent] intends to intimidate or harass the person." Davis v. Arledge, 27 Wn. App. 2d 55, 65, 531 P.3d 792 (2023).

John asserts that the trial court's finding that he committed domestic violence is not supported by substantial evidence because there was no "objective reasonable evidence of fear." Specifically, citing In re Marriage of Freeman, 169 Wn.2d 664, 239 P.3d 557 (2010), John argues that in order for a trial court to issue a protection order, "subjective fear must be supported by specific, objectively reasonable evidence of harm or threat; mere speculation or historical events without current risk are insufficient."[2] However, as A.L. correctly notes, Freeman concerned the standards of proof applicable on a motion to terminate a protection order—not a petition to issue one. 169 Wn.2d at 670-71. As A.L. also correctly notes, the holding John repeatedly cites was expressly abrogated by the legislature in 2011. See Sullivan v. Schuyler, 31 Wn. App. 2d 791, 808, 556 P.3d 157 (2024) (" 'In a motion by the respondent for termination of an order for protection . . . the petitioner bears no burden of proving that he or

---

[2] John also cites Maldonado v. Maldonado, 197 Wn. App. 779, 391 P.3d 546 (2017), claiming that "the Court of Appeals reversed a DVPO for insufficient evidence of reasonable fear in a family dispute." Maldonado does not hold what John claims. The court in Maldonado reversed and remanded because the trial court failed to articulate why it omitted two of the petitioner's three children from the terms of the order and because it denied protection on the basis that relief could be obtained in the parties' dissolution. 197 Wn. App. at 781-82.

she has a current reasonable fear of imminent harm by the respondent.' "
(quoting LAWS OF 2011, ch. 137, § 2)).

Examining the record in light of the applicable statutory definitions, we conclude that substantial evidence supports the trial court's findings that John engaged in unlawful harassment and stalking.[3] A.L. stated in her petition that she clearly informed John that she did not want any contact with him, a fact that John does not dispute. A.L. produced ample evidence that John had repeated unwanted contact or attempted contact with her, despite her clearly expressed wishes. Of most concern to the court was its finding that, after the restraining order was entered, John "post[ed] posters about parental alienation near the petitioner's home and other locations, knowing she would see them and knowing she would know they were posted by him." John does not assign error to this finding, rendering it a verity on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992)); see also RAP 10.3(g) ("A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number.").

Other evidence of John's unwanted attempts to contact A.L. included adding parental controls to her phone to make it unusable, adding pointed songs to her playlists to send messages, sending anonymous packages to her house, showing up at locations where he knew she would be, contacting her tennis

---

[3] John claims that his actions "constitute protected speech" and could not be the basis for finding that he engaged in unlawful harassment or stalking. John cites no authority and presents no argument to support his assertion that his actions were "protected speech." "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2014).

9

coach to attempt to gain access to her practices, creating fake social media accounts to follow her, and adding her to his digital calendar events.[4] In her declaration, A.L. stated that she is terrified of John, and has "suffered from constant fear, insomnia, nightmares, focus problems, anxiety, and situational depression as a result of his actions." Although John argues that the trial court should have disregarded this evidence because it was the product of "emotional incest," the trial court found A.L. credible, and we do not review credibility determinations on appeal. Miles v. Miles, 128 Wn. App. 64, 70, 114 P.3d 671 (2005). The evidence was sufficient for the trial court to find that John unlawfully harassed and stalked A.L.

John nevertheless asserts that the trial court's finding of domestic violence was not supported by the evidence because the conduct the court relied upon happened before entry of the restraining order and he has now moved out of state. However, a court cannot deny a protection order because the conduct did not occur recently or because the respondent no longer lives near the petitioner. RCW 7.105.225(2)(e), (f). Much of the conduct supporting the order occurred or could occur through electronic means, such as contacting A.L. through email, telephone, or text, by manipulating her phone and her playlists, sending packages, creating fake social media accounts to follow her, and adding her to his digital calendar events. Thus, even if John lives out of state, he is still capable of engaging in similar harassing and stalking behaviors remotely.

---

[4] In his reply brief, John argues that the trial court erred by not specifying precisely which acts it relied on in finding that he engaged in unlawful harassment and stalking. However, "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon, 118 Wn.2d at 809.

John also argues that substantial evidence does not support the trial court's findings because there was no evidence of any threat or physical violence towards A.L.. But RCW 7.105.010 does not limit the definition of domestic violence solely to physically violent acts. Rather, physical violence or threat of physical violence are separate bases upon which a court may find domestic violence. See RCW 7.105.010(10)(b). The trial court did not abuse its discretion by granting A.L.'s petition for a protection order.

Additionally, although the court's finding of unlawful harassment and stalking alone supports its conclusion that John engaged in domestic violence, the commissioner's finding that John assaulted A.L.'s mother while A.L. was present also supports its conclusion. Our Supreme Court has made it clear that "domestic violence includes the infliction of fear of harm *between family members* generally," not merely between the petitioner and respondent. Rodriguez, 188 Wn.2d at 592 (emphasis in original). As such, "a child's fear for a parent brought about by witnessing one parent assault the other is a psychological harm that qualifies as domestic violence and is a statutory basis for a protection order." Id. at 596 (citing In re Marriage of Stewart, 133 Wn. App. 545, 551, 137 P.3d 25 (2006)). The trial court's conclusion on revision that "the incident with the Petitioner's mother does not constitute domestic violence against the Petitioner" was legally erroneous.[5]

---

[5] Although we need not remand this matter to the trial court to correct its order, as there are alternative bases on which we can affirm the protection order, we note this error in the event of future proceedings.

II. Duration of Protection Order

John contends that the trial court abused its discretion by setting the duration of the protection order for four years. We disagree.

The trial court determined that four years was an appropriate duration for the protection order due to John's long history of violating the restraining order entered in the dissolution. John argues that "RCW 7.105.225 permits orders beyond one year only where necessary" and that it was not necessary here because he complied with the restraining order entered in the dissolution. RCW 7.105.225 contains no such limitation. And while John claims that he complied with the restraining order entered in the dissolution proceeding, the trial court did not find that claim credible. See Miles, 128 Wn. App. at 70 (credibility determinations not reviewable on appeal). The trial court did not abuse its discretion by setting the duration for the protection order for four years.

III. Newly Asserted Arguments

John contends that the protection order unconstitutionally interferes with his right to parent and conflicts with the final orders entered in the dissolution. John also argues that the trial court erred by considering inadmissible evidence, including the arbitration award, police reports, and a therapy report. However, as John did not make any of these arguments in the trial court, we decline to review them.

First, John asks this court to consider his newly asserted arguments because his "pro se status warrants liberal construction of the record."[6] However,

---

[6] John also argues that his newly raised arguments should be considered under a de novo standard of review because his privately retained counsel provided ineffective

" 'the law does not distinguish between one who elects to conduct [their] own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.' " In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting In re Marriage of Wherley, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)).

"Arguments not raised in the trial court generally will not be considered on appeal." State v. Riley, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993). RAP 2.5(a) states, in relevant part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

John does not demonstrate that the trial court committed manifest error affecting his constitutional right to parent. "Parents have a fundamental liberty interest in the care and welfare of their *minor* children." In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007) (emphasis added) (citing In re Welfare of Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)). At the time she filed her petition, A.L. was over the age of 18. Because A.L. is not a child, John's constitutional right to parent is not implicated by the protection order.

John's assertion that the protection order conflicts with the dissolution orders does not fall under any of RAP 2.5(a)'s exceptions for review of newly

---

assistance. This argument necessarily fails because "the Sixth Amendment right to effective assistance of counsel only applies to criminal proceedings, and no similar right is given to parties in civil actions" such as this protection order proceeding. Willapa Trading Co., Inc. v. Muscanto, Inc., 45 Wn. App. 779, 785, 727 P.2d 687 (1986).

raised issues. Similarly, John's argument concerning the admission of documentary evidence does not fall under any of RAP 2.5(a)'s exceptions. Accordingly, John's newly asserted arguments are not reviewable.

IV. Attorney Fees on Appeal

A.L. requests an award of attorney's fees on appeal pursuant to RAP 18.1, RCW 7.105.310(j), and RAP 18.9. Under RCW 7.105.310(j), the trial court has the discretion to order a respondent to pay court costs and reasonable attorney fees in issuing any type of protection order. If attorney fees are awardable at trial, fees may similarly be recovered on appeal. Sullivan, 31 Wn. App. 2d at 814. As A.L. is the prevailing party on appeal, we grant her request for attorney fees.

John also requests an award of fees on appeal. Because he is not the prevailing party, we decline his request for fees.[7]

CONCLUSION

Affirmed.

_____
Cheung, J.

WE CONCUR:


_____          _____
Díaz, J.

---

[7] In his opening brief, John requests that this case be set for oral argument. That request is denied as moot.